J-S18018-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| CARLOS ALCIDES SANCHEZ, | |
| Appellant | No. 1150 EDA 2014 |

Appeal from the PCRA Order entered March 21, 2014,
in the Court of Common Pleas of Philadelphia County,
Criminal Division, at No(s): CP-51-CR-0010979-2010

BEFORE:  BENDER, P.J.E., ALLEN, and MUNDY, JJ.

MEMORANDUM BY ALLEN, J.:                        **FILED MARCH 23, 2015**

Carlos Alcides Sanchez ("Appellant") appeals *pro se* from the order denying his petition for relief under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. sections 9541-46.  We affirm.

The PCRA court summarized the pertinent facts as follows:

> On September 21, 2009, at 7:48 p.m., Jose Rivera[] was shot in the area of 417 West Norris Street, which is in the intersection of Cadwallader and Norris Streets.  Prior to this shooting, [Appellant] had been searching for Jose Rivera, the decedent, to collect a debt.  During his search, [Appellant] observed Rivera in the area of Lawrence and Norris Streets.  [Appellant] exited his Ford pickup truck and began to argue with Rivera about the debt.  When Rivera said: "I don't owe you any money," [Appellant] pulled out a silver gun from his waistband and fired at least three gunshots at Rivera.  Although Rivera turned and began to run away, [Appellant] continued firing his gun until Rivera fell to the ground.  After the gunshots were fired, [Appellant] entered his pickup truck and a second male, Javier Zayas, entered the passenger side of the pickup truck.  [Appellant] then drove away from the

scene with Zayas. Zayas left [Appellant] after they were a few blocks away from the scene.

When police arrived, they transported Rivera to Temple Hospital, where he was pronounced dead at 8:25 p.m. Dr. Blanchard, from the Office of the Medical Examiner, conducted an autopsy of Rivera's body. Rivera suffered one gunshot wound to the lower back, one gunshot wound to the groin, and one gunshot wound to the right thigh. Dr. Blanchard concluded to a reasonable degree of medical certainty that the cause of death was multiple gunshot wounds. Dr. Blanchard further concluded to a reasonable degree of medical certainty that the manner of death was homicide.

When Officer Rahill responded to the crime scene, he recovered three .40 caliber fired cartridge casings. He later submitted these fired cartridge casings to the Firearms Identification Unit for examination. Officer Stott examined three .40 caliber fired cartridge casings from the crime scene. After examining the fired cartridge casings, Officer Stott determined to a reasonable degree of scientific certainty that they were fired from the same firearm. He further concluded that it was probable that the fired cartridge casings were ejected from a semi-automatic handgun.

Two eyewitnesses, Mike Seloski and George Adorno, observed the argument and subsequent shooting while they were on a basketball court in the area of Lawrence and Norris Streets. They later provided written statements to police and identified [Appellant] as the shooter after viewing a photographic array. Seloski further informed police that Zayas did not have a weapon and did not fire any gunshots at the decedent. Zayas also provided a statement to police, and he later testified at a preliminary hearing about this shooting.

PCRA Court Opinion, 8/4/14, at 2-3. Police subsequently arrested Appellant.

On April 24, 2012, Appellant entered a negotiated guilty plea to third degree murder and related charges. That same day, the trial court sentenced him to a negotiated aggregate term of twenty to forty years of

imprisonment. Appellant filed neither a post-sentence motion, nor a direct appeal.

On August 28, 2012, Appellant filed a *pro se* PCRA petition, as well as a *pro se* amended petition. The PCRA court appointed counsel, and on November 24, 2013, PCRA counsel filed a "no-merit" letter and petition to withdraw pursuant to **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988), and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*). After reviewing PCRA counsel's "no-merit" letter, and independently determining that Appellant's claims were meritless, the PCRA court issued Pa.R.Crim.P. 907 notice of intent to dismiss the petition on February 20, 2014. Appellant filed a response on March 10, 2014. By order entered March 21, 2014, the PCRA court dismissed Appellant's PCRA petition and permitted PCRA counsel to withdraw. This timely *pro se* appeal followed. The PCRA court did not require Pa.R.A.P. 1925 compliance.

In his *pro se* brief, Appellant claims that the PCRA court erred as a matter of law and/or abused its discretion in "denying or otherwise dismissing without a hearing" his claims that prior counsel was ineffective for failing to: 1) move to dismiss the charges filed against him based upon the prejudicial delay in holding his preliminary hearing; 2) move for dismissal of the charges based upon a violation of his Pa.R.Crim.P. 600 right to a speedy trial; and 3) file a requested post-sentence motion for reconsideration and/or withdrawal of his guilty plea. **See** Appellant's Brief at 4.

In reviewing the propriety of an order granting or denying PCRA relief, an appellate court is limited to ascertaining whether the record supports the determination of the PCRA court and whether the ruling is free of legal error. *Commonwealth v. Johnson*, 966 A.2d 523, 532 (Pa. 2009). We pay great deference to the findings of the PCRA court, "but its legal determinations are subject to our plenary review." *Id.* Moreover, a PCRA court may decline to hold a hearing on the petition if the PCRA court determines that petitioner's claim is patently frivolous and is without a trace of support in either the record or from other evidence. *Commonwealth v. Jordan*, 772 A.2d 1011, 1014 (Pa. Super. 2001). Finally, to be entitled to relief under the PCRA, the petitioner must plead and prove by a preponderance of the evidence that the conviction or sentence arose from one or more of the errors enumerated in section 9543(a)(2) of the PCRA. One such error involves the ineffectiveness of counsel.

To obtain relief under the PCRA premised on a claim that counsel was ineffective, a petitioner must establish by a preponderance of the evidence that counsel's ineffectiveness so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. *Johnson*, 966 A.2d at 532. "Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner." *Id.* This requires the petitioner to demonstrate that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction;

and (3) petitioner was prejudiced by counsel's act or omission. *Id.* at 533. A finding of "prejudice" requires the petitioner to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*

Counsel will not be deemed ineffective if any reasonable basis exists for counsel's actions. *Commonwealth v. Douglas*, 645 A.2d 226, 231 (Pa. 1994). Even if counsel had no reasonable basis for the course of conduct pursued, however, an appellant is not entitled to relief if he fails to demonstrate the requisite prejudice which is necessary under Pennsylvania's ineffectiveness standard. *Douglas*, 645 A.2d at 232. In assessing a claim of ineffectiveness, when it is clear that appellant has failed to meet the prejudice prong, the court may dispose of the claim on that basis alone, without a determination of whether the first two prongs have been met. *Commonwealth v. Travaglia*, 661 A.2d 352, 357 (Pa. 1995). Counsel cannot be deemed ineffective for failing to pursue a meritless claim. *Commonwealth v. Loner*, 836 A.2d 125, 132 (Pa. Super. 2003).

As correctly recognized by the PCRA court in this case, Appellant's first two ineffectiveness claims would have arguable merit only if trial counsel was ineffective in relation to Appellant's entry of a guilty plea. *See* PCRA Court Opinion, 8/4/14, at 8. Thus, we first address the validity of Appellant's guilty plea.

"[A] defendant who attempts to withdraw a guilty plea after sentencing must demonstrate prejudice on the order of manifest injustice before withdrawal is justified." *Commonwealth v. Pantalion*, 957 A.2d 1267, 1271 (Pa. Super. 2008) (citation omitted). A showing of manifest injustice may be established if the plea was entered into involuntarily, unknowingly, or unintelligently. *Id.* As this Court has summarized:

> Pennsylvania has constructed its guilty plea procedures in a way designed to guarantee assurance that guilty pleas are voluntarily and understandingly tendered. The entry of a guilty plea is a protracted and comprehensive proceeding wherein the court is obliged to make a specific determination after extensive colloquy on the record that a plea is voluntarily and understandingly tendered.

*Commonwealth v. Fluharty*, 632 A.2d 312, 314 (Pa. Super. 1993) (citation omitted).

Rule 590 of the Pennsylvania Rules of Criminal Procedure requires that a guilty plea be offered in open court, and provides a procedure to determine whether the plea is voluntarily, knowingly, and intelligently entered. As noted in the Comment to Rule 590, at a minimum, the trial court should ask questions to elicit the following information:

> (1) Does the defendant understand the nature of the charges to which he or she is pleading guilty or *nolo contendere*?
> (2) Is there a factual basis for the plea?
> (3) Does the defendant understand that he or she has the right to trial by jury?
> (4) Does the defendant understand that he or she is presumed innocent until found guilty?

(5)     Is the defendant aware of the permissible range of sentences and/or fines for the offenses charged?

(6)     Is the defendant aware that the judge is not bound by the terms of any plea agreement tendered unless the judge accepts such agreement?

Pa.R.Crim.P. 590, Comment.[1]

This Court has further summarized:

> In order for a guilty plea to be constitutionally valid, the guilty plea colloquy must affirmatively show that the defendant understood what the plea connoted and its consequences.  This determination is to be made by examining the totality of the circumstances surrounding the entry of the plea.  Thus, even though there is an omission or defect in the guilty plea colloquy, a plea of guilty will not be deemed invalid if the circumstances surrounding the entry of the plea disclose that the defendant had a full understanding of the nature and consequences of his plea and that he knowingly and voluntarily decided to enter the plea.

**Commonwealth v. Yeomans**, 24 A.3d 1044, 1047 (Pa. Super. 2011) (quoting **Fluharty**, 632 A.2d at 314-15)).

Finally, when addressing an appellate challenge to the validity of a guilty plea:

> Our law presumes that a defendant who enters a guilty plea was aware of what he was doing.  He bears the burden of proving otherwise.

_____

[1] The Comment to Rule 590 includes a seventh proposed question that is only applicable when a defendant pleads guilty to murder generally.

* * *

The longstanding rule of Pennsylvania law is that a defendant may not challenge his guilty plea by asserting that he lied while under oath, even if he avers that counsel induced the lies. A person who elects to plead guilty is bound by the statements he makes in open court while under oath and may not later assert grounds for withdrawing the plea which contradict the statements he made at his plea colloquy.

* * *

[A] defendant who elects to plead guilty has a duty to answer questions truthfully. We [cannot] permit a defendant to postpone the final disposition of his case by lying to the court and later alleging that his lies were induced by the prompting of counsel.

*Commonwealth v. Yeomans*, 24 A.3d at 1047 (quoting *Commonwealth v. Pollard*, 832 A.2d 517, 523-24 (Pa. Super. 2003)).

In concluding Appellant entered a valid guilty plea, the PCRA court explained:

The record clearly demonstrates that [Appellant's] guilty plea was entered knowingly, voluntarily and intelligently. Before accepting [Appellant's] guilty plea, this court conducted an extensive colloquy to ensure that [Appellant] had "actual knowledge of the implications and rights associated with a guilty plea." [*Commonwealth v. Allen*, 732 A.2d 582, 588 (Pa. 1999)]. [Appellant] confirmed that he understood the nature of the charges filed against him after this court carefully explained the elements of third-degree murder [and related charges]. The record also shows that there was a factual basis for his guilty plea. After this court informed [Appellant] of the elements of the aforementioned offenses, the assistant district attorney gave a summary of the facts that were the basis of this guilty plea. [Appellant] agreed that he was pleading guilty to those facts.

- 8 -

During this colloquy, [Appellant] was informed of his rights and the consequences of entering a guilty plea to the charges against him. In response to a series of inquiries, [Appellant] responded that he understood those rights and consequences. Specifically, [Appellant] confirmed that he understood his right to a jury trial and the consequences of electing to plead guilty. He also stated that he understood that he is presumed innocent until proven guilty beyond a reasonable doubt in a jury trial. [Appellant] further indicated his awareness of the permissible range of sentences and fines for the charges filed against him. He was further aware that his negotiated sentence was less than the statutory maximum sentence that could have been imposed. Throughout this colloquy, this court informed [Appellant] that it was not bound by the terms of the plea agreement unless it was accepted after a finding that it was entered into voluntarily, knowingly, and intelligently. [Appellant] completed and signed a Written Guilty Plea Colloquy form and indicated that he understood each page of the form. [Appellant] also stated that he had consulted with defense counsel before entering his guilty plea, that he was satisfied with his attorney's services, and that no threats or promises had been made to him. There was no point during the colloquy where [Appellant] informed this court that his guilty plea was unlawfully induced by counsel.

\*\*\*

Based on the totality of the circumstances, this court accepted [Appellant's] guilty plea after being satisfied that it was entered voluntarily, knowingly, and intelligently.

PCRA Court Opinion, 8/4/14, at 6-8 (footnote and citations omitted).

Our review of Appellant's colloquy with the trial court prior to the entry of his guilty plea amply supports the PCRA court's conclusion that Appellant knowingly, voluntarily, and intelligently entered his plea. **See** N.T., 4/24/12, at 7-43. Thus, because any post-sentence motion filed by trial counsel to

withdraw the guilty plea would have been meritless, Appellant's claim of ineffectiveness fails. ***Loner***, ***supra***.

Given its determination regarding Appellant's plea, the PCRA court further determined that Appellant's claims of ineffective assistance by prior counsel prior to the entry of his guilty plea was devoid of merit. The PCRA court explained:

> First, [Appellant] cannot prevail on the claim that preliminary hearing counsel was ineffective for failing to file a motion to dismiss his charges due to an alleged violation of his right to a preliminary hearing within a specific timeframe. Neither can [Appellant] be afforded relief on the basis that trial counsel was ineffective for failing to file a motion to dismiss his charges due to an alleged violation of his right to a speedy trial. The alleged inaction of counsel to file these pre-trial motions did not prejudice the outcome of this case. The record clearly shows that [Appellant] had full knowledge of the effect that his guilty plea would have on his pre-trial rights. Through the court's oral and written colloquy, [Appellant] was informed that his pre-trial rights would be waived upon entry of his guilty plea. Thus, [Appellant] fully understood the consequences of his guilty plea. Because [Appellant's] guilty plea was an informed choice, counsel's alleged ineffectiveness in failing to file these pre-trial motions could not have adversely affected the outcome of the proceedings before this court.

PCRA Court Opinion, 8/4/14, at 8-9 (footnote and citations omitted).

Once again, our review of the record supports the PCRA court's conclusions. ***See*** N.T., 4/24/12, at 21 (Appellant acknowledges that his entry of a guilty plea would render him unable to pursue pre-trial motions); ***see also Commonwealth v. Murray***, 836 A.2d 956, 962-63 (Pa. Super.

2003) (providing that the entry of a guilty plea constitutes a waiver of all defects and defenses except lack of jurisdiction, invalidity of the plea, and illegality of the sentence).

In his remaining claim, Appellant asserts that trial counsel was ineffective for failing to file a post-sentence motion for sentence reconsideration. According to Appellant, "while [he] may have had no particular right to receive a reduced sentence . . . it cannot be reasonably disputed that he did have the right to have such a request considered." Appellant's Brief at 19-20. Appellant further asserts that trial counsel's failure to file a post-sentence motion for sentence reconsideration "prevented [him] from seeking appellate review of the discretionary aspects of his sentence[.]" *Id.* at 20.

This claim of ineffectiveness is baseless. The PCRA court cogently observed:

> [Appellant] is not entitled to post-conviction relief on the claim that trial counsel was ineffective for failing to file a post-sentence motion for reconsideration of his sentence. There is no relief available because [Appellant] is not entitled to a different sentence than the one he negotiated. In **Commonwealth v. Dalberto**, 648 A.2d 16, 21 (Pa. Super 1994), [the Superior Court] opined that "in a 'negotiated' plea agreement, where a sentence of specific duration has been made part of the plea bargain, it would clearly make a sham of the negotiated plea process for courts to allow defendants to later challenge their sentence." Here, [Appellant's] sentence was lawful and as it was within statutory limits. Consequently, this ineffectiveness claim does not warrant relief because it has no merit.

PCRA Court Opinion, 8/4/14, at 10-11 (footnote omitted). We agree.

In sum, our review of the record supports the PCRA court's determination that each ineffectiveness claim raised by Appellant lacks merit. We therefore affirm its order denying post-conviction relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/23/2015